Oral argument not to exceed 15 minutes per side. Mr. Westbrook for the appellant. Good morning. My name is Clint Westbrook, and I represent Appellant Rakesia Gilbert in this case. I would like to reserve three minutes for my rebuttal. May it please the court. This case is about two errors in the district court, and they boil down to this. First, missing links in the evidence, and second, a defendant's constitutional protections. I'd like to start with the missing links. There are many in this case, and each have to do with the link between the complex system of credit card fraud and Ms. Gilbert's knowledge of that scheme. Importantly, it's not the absence of one or two of these links that poses a problem, but the absence of any of those links. Indeed, a jury could have found Ms. Gilbert guilty of aggravated identity theft if some evidence showed that she knew that her stack of gift cards were linked to real people. Instead, the government has provided no link between the complex system of credit card fraud and the knowledge that Ms. Gilbert maintained on the day she walked into convenience stores. But both parties agree that 18 U.S.C. 1028A1 requires that, quote, the defendant knew that the means of identification at issue belonged to another person. How would Pinkerton liability affect this? Your Honor, our position is that if, and we showed that it was Ms. Gilbert, the government failed to show beyond a reasonable doubt that Ms. Gilbert had actual knowledge of the identity of these other persons, that there are three reasons why Pinkerton would not apply. First, aggravated identity theft requires a showing of Ms. Gilbert's actual knowledge. To convict of this crime under Pinkerton would be to fail to show every element of that crime beyond a reasonable doubt. That's always true with Pinkerton. That's what Pinkerton is. Your Honor, our position is that the uniqueness of 1028A, as interpreted by the Supreme Court in Flores-Figuera, shows that the actual knowledge requirement is unique. Subsequent to that case, every has applied Pinkerton liability to 1028A. Have you found a case anywhere, district court, circuit court, anywhere, saying Pinkerton does not apply to 1028A? The cases that I have found, Your Honor, when Pinkerton does apply, all of the courts are saying the actual knowledge is there. So they don't overturn the actual knowledge that was found in 1028A and they subsequently allow Pinkerton to stand as well. The answer to my question is no. Have you found any that say because the actual knowledge is there, Pinkerton applies? That because the knowledge is there, Pinkerton? Yeah, in other words, you're saying in each of those cases they found actual knowledge to apply and still applied Pinkerton liability. I'm not clear for what, but you can explain that to me. But in any of those cases, do they say the only reason Pinkerton applies is because there's actual knowledge? No, Your Honor, I haven't seen that. But our position is that the requirements of the Sixth Amendment would indicate that if we don't have actual knowledge, then to find Ms. Gilbert guilty of 1028A under Pinkerton would violate the Sixth Amendment because it's imputing actual knowledge when Pinkerton simply applies constructive action. So the case of Pinkerton discusses the overt acts of co-conspirators. And here, to find Ms. Gilbert guilty under 1028A would be to say that we can impute her actual knowledge of every co-conspirator that she discussed. This, this court in United States v. Swiney has held that the defendant must, the analysis of reasonable foreseeability is unique to the individual defendant in the case. And in this case, if there is no actual knowledge under 1028A, it's our position that Pinkerton would not attach because for her as a defendant, there was nothing about this conspiracy that made actual knowledge of identity theft, aggravated identity theft, foreseeable. So this is a case of wire fraud. All she had to know was that, right, if all they're imputing to her through Pinkerton is the knowledge of her co-conspirator that they were getting credit card numbers of actual people from China. That's all they were imputing to her through Pinkerton, correct? That's right, Your Honor, that her co-conspirators had actual knowledge of that identity theft. But it's a reasonable foreseeability analysis. So under Pinkerton it would have to be true that Ms. Gilbert specifically, it was reasonably foreseeable to her that based on her conversations with her co-conspirators, she would know that they planned to steal someone's actual identity. Do we have a need to go to Pinkerton liability? I'm curious about that. So here we have someone who was obtaining gift cards whose co-conspirator admitted that he sent money to China in order to purchase credit card numbers. She sent money to the same person in China that he sent money to. She admitted to her co-detainee that she was engaged in credit card fraud. We have evidence that the credit cards worked. Credit cards don't work unless they're attached to a real account. So I don't know why I need to go to Pinkerton liability. Well, Your Honor, perhaps the best distinction that comes through in the government's brief that is misleading perhaps is that the co-defendant's testimony, the cellmate's testimony. So Ms. Alan James, which is Ms. Gilbert's cellmate, the government says was directly told by Ms. Gilbert to use the reader-writer to re-encode them. The government leaves that conclusion hanging but the implication is that you load the cards with credit card numbers. But Ms. Alan James, on the third day of trial, said that Ms. Gilbert told her that you load funds onto the cards. Funds, not lines of credit, not account numbers. For all the missing links between the system... So we view the evidence in the light most favorable to the government, right? Yes. If we take all the evidence Judge Larson just gave, even though you're right, there's other evidence in the record, but if we take the evidence Judge Larson just gave and view it in the light most favorable to the government, why doesn't that satisfy the knowledge requirement? Because Your Honor, it's a very high actual knowledge requirement. So perhaps 1028, regular 1028 identity theft, perhaps that would be met here. That's a different issue that wasn't charged in this case. 1028A, aggravated identity theft, requires that Ms. Gilbert had actual knowledge that she was stealing the identity of a specific individual. She doesn't have to know the specific individual from whom she's stealing. She just has to know she's stealing the identity of an individual. Yes, Your Honor. And our position is that none of the evidence shows beyond a reasonable doubt that that's true. Because her understanding of the conspiracy for wire fraud, as affirmed by her discussions with her cellmate, was that she was loading funds onto these gift cards. And I thought she knew, didn't she send money to China too? Yes, Your Honor. And so didn't she know she was getting credit card numbers in return versus funds? No, Your Honor. The evidence only shows that Ms. Gilbert knew that the account numbers she was receiving were valuable. She was willing to pay for them and as Mr. Gooden's testimony explained to me... What account numbers? Go ahead. Sorry. No, go ahead. What account numbers could she have thought they were? Well, so the gift card accounts that, the gift cards that they stole were these Visa Vanilla cards. You can go to Walmart, Meyer, whatever, and purchase gift cards that don't have names on them. They don't have identifying information. It's strictly account number. And you could go use that anywhere for $50, $100. They were changing the numbers on them so that it matched. And in fact, the last four numbers were the same so that it worked, right? So if I'm in a store, you run your card. They were changing the numbers. And the last four numbers on the card were the same as the last four numbers they sent from China. So that, because all you see on your receipt is X, X, X, and then the last four numbers. So that was the scheme. The people who were running it wouldn't know because those matched. So she knew, at least in part, that these were, that the numbers were changed, right? But did she know that they were credit cards as opposed to gift cards? Is that what your focus is? Yes, Your Honor. That's the important distinction. She may have known that the accounts were valuable but not that they were credit card accounts. Because if they were gift cards, and explain to me, maybe I don't understand, but I thought that gift cards don't have to be attributed to a particular person, whereas credit cards are. You have your credit card and he has his credit card. That's exactly right, Your Honor. And there's another category of potentially valuable accounts which would be corporate credit card accounts. Now we had bank experts here, bank tellers and bankers and those involved in the credit card industry say, well actually all credit card numbers are attached to natural persons. Well, that's, there's no evidence that Ms. Gilbert knew any of that. So it's, it's complete... But a jury can reasonably rely on their own knowledge of how the world works in order to infer what your client would have known, correct? Well, Your Honor, in this case, because the actual knowledge standard is so high under Flores-Figueroa, I would say that the jury must have found facts beyond a reasonable doubt that she, and not just a reasonable person, would have known, or did know, excuse me, that these were connected to real persons' accounts. But if that's the standard, then the only time somebody could be convicted is if they got on the stand and admit, yes, I actually knew whatever the thing is that they're required to know. Well, Your Honor... That can't be the standard for conviction, right? Or else the government, nobody will ever be guilty of this crime. I agree, Your Honor. But there are, United States v. Atkins, for example, is a case where the co-conspirators got together, they all stole individual, they fraudulently obtained credit card reports for individuals, then they all made a fake identification, they used that fake identification, along with stolen credit cards, to commit aggravated identity theft. That's clear identity theft. And in Atkins, they used Pinkerton liability, right? They affirmed Pinkerton liability as well, but they did find actual money. Can I ask you a question related to both of those questions, which is, I thought what she told the jailhouse informant at one point was they were using credit cards. That is not the testimony, Your Honor. That's the implication in the government's brief. The record reflects, page ID 1604-05, that Ms. Allen James said that they were loading funds onto these stolen gift cards. So you're saying the government's misrepresenting that statement? No, Your Honor. It's left open-ended. So in much of the government's brief, they say, for example, these accounts are only valuable if they're linked to real persons. That's  The government's brief, I believe, said that they loaded cards, they used a reader-writer machine to load them. And the implication is that Ms. Allen James' testimony was that they used the reader-writer machine to load individual, specific persons' credit cards. That's not at all the testimony. The testimony was that Ms. Gilbert told Ms. Allen James that they used, they loaded funds onto the gift cards. Didn't she also say, I'm in jail for credit card fraud? I would have to check the record, Your Honor. I'm not sure about that specifically. That's my recollection. I'm in jail for credit card fraud, and then even if it is, as you say, we loaded funds onto these cards, a reasonable jury could infer that those funds came from credit cards. So at 1602, the government says that she said she was in custody for credit card fraud. And even so, Your Honor, that's the charge that the government brought against Ms. Gilbert. That's not a showing of factual proof that Ms. Gilbert had that actual knowledge. So viewed in the light most favorable to the government, the question is, could a reasonable jury make that leap? Our position is that there was not enough evidence for the jury to do that. And it was these sort of inconclusive statements saying, well, the only valuable accounts are for persons, individual persons, natural persons, that was presented to the jury that led them to believe this without sufficient evidence. The other thing is, in order, oh, I'm sorry. I see my time. I'm happy to answer another question. Well, let me just ask this one more question. So you have this theory about business accounts. She might have thought, even if she thought they were credit cards, she might have thought they were all business accounts. But the government only has to show that one of these accounts was linked, that she knew one of these accounts would have been linked to a real person. So for that not to be true, she would have to believe that all of these credit card accounts were business accounts and not a single one would have been a real person. Well, with respect to Your Honor, it still assumes that she knew there were credit card accounts. I'm saying, let's assume we can get over the credit card problem. If it's a credit card, does the government have to show that she knew they were all business accounts or just that one of them? I don't believe that would be the standard, Your Honor, but our position is that there's no evidence even showing that she knew they were all credit cards. To rely on bank experts... A credit card, though. You only need A credit. That's my question. A or many, because there are different places in your brief. Sometimes you say one, sometimes you say all. To show aggravated identity theft, my understanding is that the government would have to show that Ms. Gilbert, at least once, knowingly used what she knew to be an identification document to identify herself as a specific individual, and I believe one would satisfy that. Thank you. Good morning. May it please the court, I'm Alexis Sanford, representing the government, and I was trial counsel in the district court in this matter. Rekisha Gilbert and her co-defendants were stopped twice, both times hundreds of miles from home with hundreds of re-encoded cards and numerous cigarettes in the vehicle with them. That same month, Ms. Gilbert wired $4,000 to China via Western Union. Her co-defendant testified that she was the ringleader in a scheme centered on buying and using credit card numbers. Your opponent says that Pinkerton liability doesn't fly here because no actual knowledge. Is that accurate? I think that we can infer actual knowledge based on the circumstantial evidence in the case of the sale safe, Pinkerton still captures Ms. Gilbert's culpability. Does Pinkerton require actual knowledge of Gilbert? No, I think it requires that it was reasonably foreseeable as part of their ongoing conspiracy that an actual identity, an actual number linked to a person would be used. Did they object to the Pinkerton instruction below? They did. And did they object because it was imputing actual knowledge? Yes. So that's preserved? Yes. Okay. All right. I think that, as I was saying... Why was it successful under your view of Pinkerton? Reasonably foreseeable as part of the conspiracy that credit cards would be used? As part of the scheme? Why was it reasonably foreseeable? I think based on the testimony of her co-defendant that he knew that they were using credit card numbers. And I think based on the testimony we had about Ms. Gilbert's culpability, that we know that she bought something of value for $4,000 from China. We know that she was... Why wasn't she just buying gift cards? If she was buying gift cards, I don't think there would have been testimony from her former  But I've looked at the page that your opponent referenced, 1605, and to 04 to 05, and that's how you load the funds onto it, with the machine. So is there some other place where her jail mate said credit cards? Well, another place is 1602, where the question was, did she tell you about her charges, which is what the government's claiming that Gilbert did. Yes, that it was for credit card fraud, but that isn't true that the government indictment claims credit card fraud, right? That is true that the government indictment claims credit card fraud. Where else is there that you can say the jail mate gave testimony that there was credit card involvement that Gilbert knew about? Respectfully, I think the argument would be the use of a reader-writer to load anything on the cards, although the co-detainee maybe described it as funds, might be a misunderstanding of what was occurring. What Ms. Gilbert was describing was the re-encoding of a magnetic strip on a credit card. I'm not aware of a way to load funds. Where do you say that? You don't load funds? Who knows? And of course, it should be in the record, but what do you put on a gift card to make it work? Don't you load funds on a gift card? What actually gets loaded is a series of numbers that is linked to a bank that is owned by ... There's a number of banks that work with, for instance, in this case, the cards were Vanilla Visa and Vanilla MasterCard. There's a series of banks. Funds get loaded, and there's a 16-digit number on that card, just as there would be if it was a credit card, that's linked to an account at a bank somewhere that says there's $50 available in this card, or $20. But that's not tied to a specific person, and that's the whole problem here, is that she has this argument that she didn't know that these were credit cards of a specific person. She thought that they were gift cards that are not attributed to any person. And I think there are some problems with her argument. I think the condition of the cards certainly gave notice that there was something amiss here. I think the use of a reader-writer indicates that these aren't just legitimate gift cards that they were using. I think the code ... Well, I'm not disputing that she knew there was a fraudulent scheme here, but the problem is this specific knowledge under 1028A requiring that there be a specific person whose identity she is taking over. But short of an admission from a defendant, the only way to prove knowledge in a case like this will be circumstantial evidence and inferences that follow therefrom. And I think ... Or if these cards were actually credit cards with somebody's name on it. Certainly, that would be excellent. Were they credit cards with somebody's name? They were not. There were no names visible on the cards. So they were like these gift cards that supposedly you can just pick up at a store and somebody scammed the system, and somehow or other you're not going to get use of the gift card, but this is a different scheme. I'm sorry. I've gone aside. Forget what I said. Can I ask a question that I think might be getting at what Judge Moore is trying to get at? If I wanted to engage in fraudulent activity, which I would not do, but if I wanted to and I were to ... Could I buy gift card numbers from China or Michigan, for that matter, and load them onto another gift card? So I go into Walmart and I steal a bunch of blank vanilla gift cards. And now I'm like, well, that's useless because I don't have any money attached to them. So your allegation is she bought fraudulent credit card numbers. Those credit card numbers are all linked to a real person's account. Could she instead have bought gift card numbers? So we got a stack of vanilla gift cards in China that have funds attached to them, but those funds would not themselves be somehow attached to some account. Is it possible to have a gift card that is not attached to a bank account? No. All gift cards are attached to a bank account, although it might not be attached to the bank account of Judge Larson. It might be just sort of a more anonymous bank account. That is how they work. But then you would have lost somebody, correct? Well ... Could it be Target? It wouldn't be Target. It would be ... Well, let's say the Target example. I go into Target to purchase a gift card. The way that money or value is loaded on that gift card is whatever bank is servicing the gift card, let's say Target has a bank that does that, contacts my bank, confirms that I have ... You don't want to have anyone trace you. So I give $50 cash, and essentially what happens is there's a 16-digit number linked to an anonymous essentially bank account with a $50 balance. But if she then stole your gift card that didn't have your name on it ... Your Target gift card. She steals the Target gift card. She wants to load it on the funds from that Target gift card onto this vanilla Visa. Well, am I not an actual person? And then it's that 16-digit number ... You're not a person, no. You're in the AUSA. But if somebody has to load money onto a gift card for it to have value, then isn't that linked to a person? Even if it isn't in the traditional sense. I thought you had to steal the identity of a person. And so that's not the identity of a person, because if I have $50 cash and Judge Moore steals it, she's not stealing my identity, she's taking my cash. But I think the numbers are what's at issue in a matter of this nature, right? These 16-digit numbers aren't the identity of, for instance, the victims that testify. So I understand your argument. Your argument is if Judge Larson goes and buys 10 gift cards, or steals 10 gift cards, and I go buy 10 gift cards, and then she uses my numbers on hers, she's using my identity? I think that's kind of a stretch, but I think there is a real person behind there. And I think the distinction in this case is none of these were actual gift card numbers loaded on here. These were all debit and credit card numbers found on all of these. What did she know? Well, I don't... The cards that she used, the evidence shows, were credit cards with specific people's names on them? Yes. They all were, right? All. Because the guy in China stole them, got them through whatever. Right. They were from data breaches. Right. Things of that nature. So they were all credit and debit card numbers. There weren't any gift card numbers. There might have been a few that hadn't been re-encoded. Do they have people's names on them? They do not. There's only the magnetic strip and then the numbers that have been changed on the front. On the vanilla visa cards. Correct. I think Judge Moore is talking about the numbers purchased from China. I don't know what condition they arrived in.  She wires the Western Union money... There's no evidence in the records, so you can't attribute it to her. So she can't be convicted of something where there's no evidence in the record of this. There's no evidence of what form she received numbers from China and whether the names were actually linked to them. But I think that there are other things in the record that lead to a reasonable inference when the question is, can any rational trier of fact find that this has been proven beyond a reasonable doubt? The answer is yes. But to make it a very simple hypo, which is a hypo. She did not take a credit card of Lucy Lucky and present it as though it were her own to get money. No. She didn't have a credit card that has somebody else's name on it that she was using. So if we don't buy your knowledge argument, do you win under Pinkerton? I think we do. Can we come back to that? And can you explain that? Because I kind of got you off track. Sure. I think that the question with Pinkerton is whether it was reasonably foreseeable in the context of their conspiracy that an actual person's means of identification would be used. And I think when we look at what Ms. Gilbert was actually doing as far as wiring money to China, being aware of the re-encoding of cards, when we have her co-defendant's testimony that he knew these numbers belonged to actual people and that they didn't have the permission to use them, it's reasonably foreseeable that in their credit card scheme that an actual number belonging to a real person would be used. And the key to that is the co-defendant's testimony, because that changes, right? Because everything else is kind of the same, but the co-defendant's saying, of course we knew. Of course he knew. Right. But why is it foreseeable to her? I think that he knew, when there's nobody who says he told her. No, he was actually recruited into this by her and her boyfriend. In the two traffic stops, her co-defendant, Mr. Gooden, was only in the second traffic stop. He wasn't present for the first incident that occurred in Missouri. And then he's recruited to join this group and participate in this behavior, and is made aware of what the scheme is, wires his $500, gets his 50 numbers. He knows they belong to people. He knows he doesn't have permission. And we have that parallel evidence that Ms. Gilbert is doing the same behavior, wiring $4,000 in multiple transactions, some of which was to the exact same person that Mr. Gooden sent his money to. And because this was presented to the jury, we view it in the light most favorable to the government. And so we take all of that and say, is it reasonably foreseeable when you view all this evidence in the light most favorable to the government, including that they recruited him in? He said, I knew when I did this. She did the same exact conduct. Is it possible a rational juror could think that? That's the way we look at it, correct? Correct. Whether any rational trier of fact could have found this. So is it important that she recruited Gooden as opposed to that Gooden recruited her? I think it's important that, yes, that Gooden was new to this scheme and that she was not. I think it... And did Gooden say that she told him how to do this? No, Gooden testified that her boyfriend told him how to do it. And there's no other testimony linking her to that? Correct. But the government's position is that what she actually did, what Gooden, her co-defendant, testified about, and what her co-detainee testified that she admitted, any one of those supports a reasonable inference that she actually knew that she was using numbers that belonged to people. And that short of that, certainly then Pinkerton liability makes her culpable for aggravated identity theft in this case. And then briefly to address the sentencing issue raised by the appellant, Title 18 of United States Code Section 1028A requires the two-year consecutive sentence and the statute prohibits the district court from considering or compensating for that. This has been upheld and recognized in multiple circuits. The Eighth Circuit rejected this exact argument that Gilbert is making in Gwian Esquivel in 2008. There, the Eighth Circuit noted that the statute limits the sentencing discretion of the district court with regards to aggravated identity theft, but that Booker and its progeny do not mean that Congress is prohibited from setting any limit on a sentencing court's discretion. This court has recognized that in the Stahl case, saying it's well established that Congress has the power to fix the sentence for a federal crime and the scope of judicial discretion with respect to a sentence is subject to congressional control. So I think that Ms. Gilbert was sentenced pursuant to statute, which was well within Congress's authority to set that limit and that that sentence is entirely appropriate. And if there are no other questions, the government is prepared to submit. Thank you. Thank you. Your Honor, three points. First, the government noted that perhaps the testimony from Ms. Alan James represented just a misunderstanding of what was happening, and that's exactly right. Ms. Gilbert did not, the government has not shown any evidence that Ms. Gilbert knew what was happening here and that her actual knowledge would rise to the level of aggravated identity theft. Secondly, 1028A does set a high standard of actual knowledge as repeatedly affirmed through the Supreme Court's precedent, such as in Flores-Figuerera, that Ms. Gilbert had to know that she was using a means of identification and that means of identification belonged to a specific individual. Quickly on Pinkerton, the government notes that Mr. Good knew that there was credit card fraud here. But again, the question is whether it's reasonably foreseeable that what Ms. Gilbert agreed to would lead to aggravated identity theft. And for example, in this court's judgment in United States v. Smiley, the court recognized that the individual defendant had to recognize that the line of events that would occur as a result of the conspiracy at the time they agreed to the conspiracy was reasonably foreseeable to that particular defendant. And here, when you agree to wire fraud and agree to steal gift cards and buy cigarettes with them, our position is that there's nothing that would give Ms. Gilbert reasonably foreseeable knowledge that her co-defendants would intend to intentionally steal the identity of another person. And therefore, even if we allow Pinkerton... I'm sorry. Because it's more likely that they would be stealing Target gift cards? I mean, did the conspiracy take any precautions to make sure when I'm buying these numbers from China, make sure that you're not sending me credit cards. You're only sending me Target gift cards that aren't linked to a real person, although maybe they are, but let's assume they're not. Why wouldn't it be reasonably foreseeable that at least one of those numbers you're buying from China that you know is some kind of a card number would be a credit card number linked to a real live person? Just one. Your Honor, and I think, Your Honor, the actual knowledge... If Ms. Gilbert didn't have the actual knowledge, and she told Ms. Alan James how this whole scheme worked, and she said it was funds, and these were Vanilla Visa gift cards, and what they all agreed to was to steal these gift cards, re-encode them, and buy cigarettes. And for all of the... With something. Yeah, but they've got to re-encode them with something, and it's much more reasonably foreseeable that they were numbers of people than they were thousands of gift card numbers, which somehow would have to be activated. But Your Honor, the question isn't whether they were going to be encoded with numbers of actual people. It's whether co-conspirators were going to know that that happened, and then they were going to go out and intentionally steal the identity of other persons. And then... I didn't know they were going to go buy some kind of numbers, stored some kind of numbers that had value. Some kind of 16-digit numbers. She knew that. But Your Honor, the Pinkerton standard would be that the subsidy of crime, that is aggravated identity theft, was reasonably foreseeable as a result of the conspiracy, which is wire fraud. So that is to say, when Ms. Gilbert agreed to wire fraud, she reasonably foresaw that one of her co-conspirators would know that he had the individual... If I was just getting on Amazon and putting numbers in I bought from China, all I was doing was buying numbers from China and putting them on Amazon, would it be reasonably foreseeable that those are credit card numbers when I'm putting in 16-digit numbers and using it to get things? Yes, Your Honor. But with respect, that's not what aggravated identity theft requires. It requires that you knew that. No, no, no. It's reasonably foreseeable. So if one of my co-conspirators says, of course this is what was going on, everyone knows this, and I do it, it's reasonably foreseeable to me that when my co-conspirator's doing it too, he's doing the same thing, right? And he knows. So what you're... I mean, it seems to me what she's saying is see no evil, hear no evil, and yeah, we recruited this guy, we did this, we're buying thousands of numbers, but it's possible those thousands of numbers were gift card numbers, which seems completely illogical to me the way the system works. It's much more possible that those thousands of numbers were credit card numbers. I see my time is up. May I answer your question? Answer, yes. It is possible that those are credit card numbers, but what matters here is not what ended up happening or not what could have happened, but what the defendant knew about the identity of those cards that she stole and what her co-conspirators knew, and whether that was foreseeable to Ms. Gilbert. And our position is that knowledge was not foreseeable. Does the record show that they're the same number of numbers on a gift card as there are on a credit card? I'm not sure of that, Your Honor. I believe that the 16-digit card is... The 16-digit number is what allows the machine to process, but I'm not sure exactly whether that distinction is. Isn't that always true? That it would be? I mean, this cuts in your favor, I think, but isn't it always true that the gift card numbers are the same as credit card numbers? That may be. And I think that points to what experts knew versus what Ms. Gilbert knew. But the question really is what is the evidence at trial? That's right. And so we don't know that there was evidence at trial that would show one way or the other that there are the same number of numbers on gift cards as there... Because hypothetically, if gift cards only have eight numbers and credit cards have 16 and we know that she's using one or the other, we would know that she should know what she was using. Thank you. That's right, Your Honor. And our position is that all of that points to why it's not foreseeable under Pinkerton. Thank you very much for your argument. And I see, Mr. Westbrook, that you're appointed pursuant to the Criminal Justice Act, and I want to thank you on behalf of the court for your service to your client and the service to the public interest. We appreciate it very much. Thank you, Your Honor. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?